UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| **Sidney Coulter Benton,** | ) | Civil Action No.: 3:24-cv-1249-JDA |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Equifax Information Services, LLC,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Sidney Coulter Benton, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8. Venue is proper in the Columbia Division because the Plaintiff resides in Richland County and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Sidney Coulter Benton, is a resident and citizen of the State of South Carolina, Richland County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

2

10.    Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11.    Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12.    Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13.    Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

14.    The Plaintiff alleges that Defendant repeatedly failed to block, delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes. Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to

further damages as set forth herein.

## FACTUAL ALLEGATIONS

15. On or about March 26, 2023, Plaintiff received an alert from Credit Karma of a new collection account being reported on her Equifax credit report. The collection account was reported by National Credit Systems for an unpaid balance with the Polo Village Apartments, located at 1270 Polo Road in Columbia, South Carolina, in the amount of $7,509.00. Plaintiff has never resided at Polo Village Apartments on Polo Road. Plaintiff has lived at her current residence on Forest Drive in Columbia, South Carolina, for the past three years.

16. On or about April 5, 2023, Plaintiff went to the City of Forest Acres Police Department and filed an Incident Report stating that an unknown individual had impersonated her and obtained an apartment in her name at the Polo Village Apartments. The incident report was then forwarded to the Richland County Sheriff's Department due to the offense occurring outside of the city limits for Forest Acres.

17. On or about April 6, 2023, Plaintiff filed an Identity Theft Report with the Federal Trade Commission.

18. On or about June 22, 2023 Plaintiff obtained a copy of her Equifax credit report through annualcreditreport.com. When Plaintiff reviewed the report, she discovered it contained errors and inaccurate information.

19. On or about June 30, 2023, Plaintiff sent a written dispute letter ("First Dispute") to Equifax in which she disputed certain information that was reporting incorrectly on her credit report. Specifically, Plaintiff disputed the National Credit Systems, Inc. collection

account xxxxx94 for Polo Village Appts, with an unpaid amount of $7,509, as not her account as she had never lived at Polo Village Apartments.  Plaintiff also disputed the reporting of Exeter Finance, account xxxxxx10901as being too old to be reported as it was from a loan on her car that was totaled in 2015.  Plaintiff also disputed an address where she had never lived  in North Charleston, SC,  and a name variation that she has never used.  Plaintiff provided Defendant her full social security number, date of birth, and address.

20.     Equifax received Plaintiff's First Dispute on or about July 12, 2023.

21.     Thereafter, on or about July 18, 2023, Defendant sent Plaintiff a letter stating it had received her dispute regarding inaccurate information on her Equifax credit file, but claiming it was  unable to locate a credit file with the identification information Plaintiff provided.  Defendant requested Plaintiff forward it a copy of her Driver's License and Social Security Card.

22.     On or about August 16, 2023, Plaintiff returned Defendant's letter with a copy of her Social Security Card and a copy of her most recent paystub, via certified mail. Defendant received this information on August 19, 2023.

23.     On or about August 20, 2023, immediately after receipt of Plaintiff's proof of identity documents, Defendant sent Plaintiff a letter stating the information Plaintiff had provided as proof of identity did not match the information they currently had on her credit file and requested that Plaintiff send copies of two items, one verifying her identity and one verifying her address.

24.     On or about September 11, 2023, Plaintiff sent a second dispute letter to Equifax ("Second Dispute") wherein she stated that she had already sent Defendant a copy of her

5

Social Security card and a pay stub showing her address in July and they were again requesting the same information. With her Second Dispute Letter, Plaintiff again provided a copy of her Social Security card and paystub, as well as a copy of Defendant's August 20, 2023 letter. Plaintiff again disputed the National Credit Systems, Inc. collection account xxxxx94 for Polo Village Appts, with an unpaid amount of $7,509, as not her account as she had never lived at Polo Village Apartments. Plaintiff also disputed the reporting of Exeter Finance, an address that she never lived at in North Charleston, SC, and a name variation that she has never used. Plaintiff once again provided her full social security number, date of birth, and address and mailed this letter via certified mail.

25. Defendant received Plaintiff's Second Dispute letter on September 30, 2023.

26. On or about October 8, 2023, Plaintiff received the results of Defendant's alleged reinvestigation into her Second Dispute. Specifically, Defendant stated it had updated Plaintiff's current address and that the disputed address and name were not currently reporting on her Equifax credit file. Additionally, Defendant informed Plaintiff that the National Credit Systems account had been verified as accurate and the Exeter Finance account had verified the account belonged to Plaintiff. As a result, both disputed accounts continued to be reported on Plaintiff's Equifax credit report.

27. On or about January 8, 2024, Plaintiff sent a third dispute letter to Equifax ("Third Dispute") in which she again disputed the continued reporting of the National Credit Systems, Inc. Account xxx2294, as a fraud account. Plaintiff specifically informed Defendant that the account was fraudulent as she had never lived at Polo Village Apartments and included a copy of the police report documenting the fraud. Plaintiff

requested that Defendant send her copies of each and every document it received from National Credit Systems to verify the account. Plaintiff also disputed the Exeter Finance Account xxxxxx1001 as a 2015 account that was too old to still be reporting. Plaintiff requested Defendant forward her a copy of the alleged 2017 payment to Exeter Finance if Defendant continued to report said account.

28. Defendant received Plaintiff's Third Dispute on January 11, 2024.

29. On or about January 15, 2024, Defendant again sent Plaintiff a letter stating they had received her dispute concerning inaccurate information on her Equifax credit file, but were unable to locate a credit file in their database with the identification information provided. As a result, Defendant requested the same two forms of information Plaintiff had already provided.

30. On or about January 15, 2024, Defendant also sent Plaintiff a letter stating that, despite receipt of the police report, it would not block the fraudulent collection account from her credit file without proof of her identity. Again, Plaintiff had already forwarded this information to Defendant via certified mail.

31. On or about January 22, 2024, Defendant sent Plaintiff a letter including a copy of "Remedying the Effects of Identity Theft" prepared by the Consumer Financial Protection Bureau, but never responded to Plaintiff's dispute.

32. On February 12, 2024, Plaintiff sent a copy of her driver's license, paystub and the police report to Defendant, with a copy of Defendant's January 15, 2024 letter as proof of her identity and address. Defendant received this information on February 15, 2024.

33. To date, Defendant has not responded to Plaintiff's January 11, 2024, dispute letter.

34. To date, Defendant continues to incorrectly report a fraudulent account as belonging to Plaintiff.

35. Defendant has failed and/or refused to make a reasonable investigation into Plaintiff's disputes.

36. Defendant has failed and/or refused to provide Plaintiff a copy of her credit file.

37. Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

38. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Equifax Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

39. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*,

8

115 F.3d 220, 225 (3d Cir. 1997).

40. Equifax's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

41. The Plaintiff adopts the averments and allegations of paragraphs 15 through 40 hereinbefore as if fully set forth herein.

42. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

43. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

44. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit, denial of an apartment, anxiety, worry, fear, loss of sleep, family discord, headaches, loss

of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

45.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

46.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

47.     The Plaintiff adopts the averments and allegations of paragraphs 15 through 46 hereinbefore as if fully set forth herein.

48.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

49.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

51.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered,

continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit, denial of an apartment, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

54. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D. For such other and further relief as the Court may deem just and proper

                    */s/ Penny Hays Cauley*
                    Penny Hays Cauley, Fed. ID No. 10323
                    Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                    */s/ Penny Hays Cauley*
                    Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169